1 | Jason C. Wright (State Bar No. 261471)
  | JONES DAY
2 | 555 South Flower Street
  | Fiftieth Floor
3 | Los Angeles, CA 90071
  | Tel: (213) 489-3939
4 | Fax: (213) 243-2539

5 | Christian G. Vergonis (*pro hac* application forthcoming)
  | Ryan J. Watson (*pro hac* application forthcoming)
6 | Andrew Bentz (*pro hac* application forthcoming)
  | JONES DAY
7 | 51 Louisiana Ave., N.W.
  | Washington, D.C. 20001
8 | Tel: (202) 879-3939
  | Fax: (202) 626-1700

Counsel for Plaintiffs
R.J. REYNOLDS TOBACCO COMPANY;
AMERICAN SNUFF COMPANY, LLC; AND SANTA
FE NATURAL TOBACCO COMPANY, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.J. REYNOLDS TOBACCO COMPANY; AMERICAN SNUFF COMPANY, LLC; and SANTA FE NATURAL TOBACCO COMPANY, INC., | Case No. 2:20-cv-04880 **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| *Plaintiffs*, | |
| v. | |
| COUNTY OF LOS ANGELES; COUNTY OF LOS ANGELES BOARD OF SUPERVISORS AND HILDA L. SOLIS, MARK RIDLEY-THOMAS, SHEILA KUEHL, JANICE HAHN, and KATHRYN BARGER, EACH IN HIS OR HER OFFICIAL CAPACITY AS A MEMBER OF THE BOARD OF SUPERVISORS, | |
| *Defendants*. | |

Plaintiffs R.J. Reynolds Tobacco Company ("RJRT"), American Snuff Company, LLC ("ASC"), and Santa Fe Natural Tobacco Company, Inc. ("Santa Fe") bring this action for declaratory and injunctive relief against the County of Los Angeles and the County's Board of Supervisors and the Board Members in their official capacities (Hilda L. Solis, Mark Ridley-Thomas, Sheila Kuehl, Janice Hahn, and Kathryn Barger).

## PRELIMINARY STATEMENT

1. In an overbroad reaction to legitimate public-health concerns about youth vaping, the County of Los Angeles ("the County" or "L.A. County") recently enacted one of the most draconian bans on tobacco products of any county in the nation. L.A. County is rightly concerned with the recent rise in youth use of vaping products. The increase in youth vaping over the past two years, and serious health issues from illicit products, are now at the heart of a national discussion.

2. Plaintiffs R.J. Reynolds Tobacco Company, American Snuff Company, and Santa Fe Natural Tobacco Company (collectively, "Reynolds") are committed to keeping tobacco products out of the hands of youth. Reynolds has rigorous standards to ensure its marketing is accurate and responsibly directed to adult tobacco consumers aged twenty-one and over. Reynolds also has strict compliance policies for retailers who sell its products to prevent youth from purchasing tobacco products and supports programs that train retailers to comply with age restrictions.

3. Los Angeles County could have supplemented Reynolds's efforts by targeting youth usage of vapor products through increased enforcement of age restrictions or public-education campaigns. Instead, the "Los Angeles County Tobacco Ordinance," as amended, unnecessarily bans sales to adult tobacco consumers and, moreover, indiscriminately extends to the non-vapor products manufactured by Reynolds. The ordinance bans the sale or distribution of every conceivable flavored tobacco product, including menthol cigarettes and flavored

smokeless tobacco products. This sweeping ban is preempted by federal law and therefore is unconstitutional under the U.S. Constitution's Supremacy Clause.

4. *First*, federal law expressly preempts the County's ban on flavored tobacco products. The manufacture of tobacco products is subject to intensive regulation by the federal Government. In striking a balance between federal authority and state and local authority over the regulation of tobacco products, Congress expressly denied states and local units of government the ability to promulgate tobacco product standards that are different from or in addition to federal standards. The County's ban on flavored tobacco products, however, is a product standard because it regulates the ingredients and additives in those products. The County's ban is thus expressly preempted by federal law.

5. *Second*, federal law also impliedly preempts the ordinance because the County's ban stands as an obstacle to the purposes of federal law. Congress authorized FDA to promulgate tobacco product standards that, in appropriate circumstances, can establish uniform, national standards for the manufacture of tobacco products and the ingredients used in such products. Congress and FDA have made the judgment that certain tobacco products, particularly menthol cigarettes, should remain available to adult users of tobacco products. The County's ordinance, however, conflicts with those federal goals and must give way.

6. The County has no legitimate interest in enforcing its unconstitutional law. The Court should thus grant injunctive and declaratory relief preventing the County from violating the U.S. Constitution's Supremacy Clause.

## PARTIES

7. Plaintiff RJRT is a North Carolina corporation headquartered in Winston-Salem, North Carolina. RJRT develops, manufactures, markets, and distributes a variety of flavored tobacco products under a variety of brand names, including menthol cigarettes under the brand names Newport and Camel, among others, and flavored smokeless tobacco products under the brand name Camel SNUS.

8. Plaintiff ASC is a North Carolina corporation headquartered in Winston-Salem, North Carolina. ASC develops, manufactures, markets, and distributes a variety of flavored smokeless tobacco products, including under the brand name "Grizzly."

9. Plaintiff Santa Fe develops, manufactures, markets, and distributes menthol cigarettes under the brand name Natural American Spirit.

10. Defendant County of Los Angeles "is a body corporate and politic . . . . of the State of California." *See* Charter of the County of Los Angeles, Art. I, § 1. As such, it exercises "county powers" as provided by the California Legislature. *See* Cal. Const. Art. 11, § 1(b).

11. Defendants Los Angeles County Board of Supervisors and the Board Members in their official capacities—Hilda L. Solis, Mark Ridley-Thomas, Sheila Kuehl, Janice Hahn, and Kathryn Barger—constitute the County's official governing body. By law, the Board "supervise[s] the official conduct of all county officers, and officers of all districts and other subdivisions of the county." Cal. Gov. Code § 25303. The Board of Supervisors and the Board Members act under color of law and the Board Members are sued in their official capacities.

## JURISDICTION AND VENUE

12. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

13. This Court also has authority to grant relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

14. This judicial district is the proper venue under 28 U.S.C. § 1391(b) because it is where the County of Los Angeles lies, where Defendants perform their official duties, and where a substantial part of the events giving rise to the claims occurred.

## BACKGROUND

### The Tobacco Control Act and Federal Regulation of Tobacco Products

15. The Family Smoking Prevention and Tobacco Control Act of 2009, Public Law 111-31, 123 Stat. 1776 (June 22, 2009), amended the Federal Food, Drug, and Cosmetic Act and established the U.S. Food and Drug Administration as "the primary Federal regulatory authority with respect to the manufacture, marketing, and distribution of tobacco products." *Id.* § 3(1), 123 Stat. at 1781 (codified at 21 U.S.C. § 387 note). The Tobacco Control Act applies to cigarettes, cigarette tobacco, roll-your-own tobacco, and smokeless tobacco products, as well as to any other tobacco products that FDA by regulation deems subject to the Act. 21 U.S.C. § 387a(b). The Act defines "tobacco product" as "any product made or derived from tobacco that is intended for human consumption." 21 U.S.C. § 321(rr)(1).

16. In 2016, FDA exercised its deeming authority, 21 U.S.C. § 387a(b), to bring within its regulatory authority all products meeting the statutory definition of a tobacco product. *See Deeming Tobacco Products To Be Subject to the Federal Food, Drug, and Cosmetic Act, as Amended by the Family Smoking Prevention and Tobacco Control Act; Restrictions on the Sale and Distribution of Tobacco Products and Required Warning Statements for Tobacco Products*, 81 Fed. Reg. 28,974 (May 10, 2016).

17. Congress passed the Tobacco Control Act to, *inter alia*, "authorize the [FDA] to set national standards controlling the manufacture of tobacco products and the … amount of ingredients used in such products." Tobacco Control Act § 3(3), 123 Stat. at 1781 (codified at 21 U.S.C. § 387 note). To that end, the Act empowers FDA to adopt "tobacco product standards," 21 U.S.C. § 387g, including "provisions respecting the … additives … of the tobacco product," *id.* § 387g(a)(4)(B)(i). The term "additives" includes "substances intended for use as a flavoring." *Id.* § 387(1).

18. The Act also directly created tobacco product standards such as a "Special Rule for Cigarettes." The Special Rule for Cigarettes bans the use in

cigarettes of "characterizing flavors" "other than tobacco or menthol." 21 U.S.C. § 387g(a)(1)(A). But the Act expressly reserves "menthol cigarettes" to FDA's regulatory authority. *See id.* (noting "the Secretary's authority to take action . . . applicable to menthol"). To date, the FDA has chosen not to ban the use of menthol in cigarettes. In fact, FDA has issued advance notices of proposed rulemaking ("ANPRMs") contemplating the adoption of "tobacco product standard[s]" banning various flavored tobacco products, including menthol cigarettes and flavored vapor products. *See, e.g.*, *Menthol in Cigarettes, Tobacco Products; Request for Comments*, 78 Fed. Reg. 44,484, 44,485 (July 24, 2013); *Regulation of Flavors in Tobacco Products*, 83 Fed. Reg. 12,294, 12,299 (Mar. 21, 2018). But it has never banned menthol in cigarettes or smokeless tobacco. And studies have shown that menthol cigarettes do not adversely affect initiation of or progression to smoking, and there is no clear association between menthol use and decreased smoking cessation. *See* RAI Services Company, Comment Letter on Advance Notice of Proposed Rulemaking Regarding Regulations of Flavors in Tobacco Products (July 18, 2018).

19. The Tobacco Control Act expressly preempts state or local regulations that set forth requirements "different from, or in addition to," any of the Tobacco Control Act's or FDA's requirements relating to federal "tobacco product standards." 21 U.S.C. § 387p(a)(2)(A) ("Tobacco Preemption Clause"). The Tobacco Preemption Clause ensures that tobacco manufacturers will have to comply with just one set of product specifications nationwide—rather than having to grapple with potentially hundreds of different requirements set by different states and local jurisdictions governing the same products. *See* Tobacco Control Act § 3(3), 123 Stat. at 1781 (codified at 21 U.S.C. § 387 note).

20. The Tobacco Control Act also contains a narrow saving clause, which provides that the Tobacco Preemption Clause "does not apply to requirements relating to the sale [and] distribution . . . of . . . tobacco products by individuals of any age." *Id.* § 387p(a)(2)(B). But the saving clause narrows the category of

permissible state and local requirements to those that turn on the "age" of the "individuals" buying or using the regulated tobacco products. *See id.* And even if the saving clause applies beyond age-based requirements, the clause does not protect state and local laws that prohibit a product's sale and distribution altogether, but rather only more limited laws that regulate the time, place, and manner of the product's sale and distribution. *Compare id.*, *with id.* § 387p(a)(1).

## The County's Ban on Flavored Tobacco Products

21. In September 2019, the County of Los Angeles Board of Supervisors heard from the Director of Public Health. She reported that there was a "vaping epidemic among youth." *L.A. County Supervisors Vote to Ban Flavored Tobacco And Call For Statewide Vaping Ban*, L.A. TIMES (Oct. 1, 2019), *available at* https://tinyurl.com/y3mgpjpn. She noted that there was evidence that vaping might be harmful and that there were a rising number of cases of "vaping-associated pulmonary illness." Press Release of Supervisor Mark Ridley-Thomas, *LA County Bans Flavored E-Cigs and Flavored Tobacco to Protect Youth*, at https://tinyurl.com/ya7uw9y7. The Board also heard from former smokers who said that flavored products had helped them quit smoking combustible cigarettes. L.A. TIMES, *supra*.

22. Then on September 24, 2019, the County of Los Angeles Board of Supervisors unanimously approved an Ordinance prohibiting retail sales of flavored tobacco products and creating a new business-license requirement. *See* Amended Los Angeles County Tobacco Ordinance (codified at L.A. County Code Titles 7 and 11) (Sep. 24, 2019), Exhibit A. After it passed, Supervisor Ridley-Thomas confirmed that the catalyst for the new ordinance was the increase in youth vaping: "The growing popularity of e-cigarettes and vaping puts the health and wellbeing of our communities, particularly our youth, at risk." Ridley-Thomas, *supra*. Supervisor Hahn echoed that sentiment: "For decades, we were making incredible progress in

decreasing tobacco use among young people. But flavored e-cigarettes have reversed that trend. Now nearly 1 in 10 high schoolers report using e-cigarettes." *Id.*

23. The Ordinance's formal legislative purpose affirmed the Board's focus on "protecting children from being lured into nicotine and tobacco use through the illegal sale of products, including vaping products." L.A. Cty. Code § 11.35.010.

24. Despite the Board's focus on e-cigarettes, the Ordinance it adopted strikes far broader. The Ordinance makes it illegal, *inter alia*, to "[s]ell or offer for sale, or to possess with the intent to sell or offer for sale, any flavored tobacco product or any component, part or accessory intended to impart, or imparting a characterizing flavor in any form, to any tobacco product or nicotine delivery device, including electronic smoking devices." *Id.* § 11.35.070(E).

25. Under the Ordinance, a "tobacco product" is "[a]ny product containing, made, or derived from tobacco or nicotine, whether natural or synthetic, that is intended for human consumption, whether smoked, heated, chewed, absorbed, dissolved, inhaled, snorted, sniffed, or ingested by any other means, including, but not limited to cigarettes, cigars, little cigars, chewing tobacco, pipe tobacco, and snuff." *Id.* § 7.83.020(G)(1). A "tobacco product" also encompasses "[a]ny electronic smoking device that delivers nicotine or other substances, whether natural or synthetic, to the person inhaling from the device, including but not limited to, an electronic cigarette, electronic cigar, electronic pipe, electronic hookah, or vaping device." *Id.* § 7.83.020(G)(2).

26. A "flavored tobacco product" is "any tobacco product, as defined in this Chapter, which imparts a characterizing flavor." *Id.* § 11.35.020(J). Menthol is among the characterizing flavors specified in the ordinance. *See id.* § 11.35.020(C) ("'Characterizing flavor' means a taste or aroma, other than the taste or aroma of tobacco, imparted either prior to or during consumption of a tobacco product or any byproduct produced by the tobacco product . . . .").

27. In short, the Ordinance bans any kind of flavored tobacco or nicotine product, whether natural or synthetic, including the sale of all menthol cigarettes and other menthol-flavored products.

28. The ban on flavored tobacco products is already in effect. And enforcement began on May 1, 2020. *See* "Tobacco Control and Prevention Program," http://publichealth.lacounty.gov/tob/ (last visited June 1, 2020).

### Plaintiffs' Products

29. Plaintiffs RJRT, ASC, and Santa Fe manufacture numerous tobacco products which are subject to the Ordinance's prohibition on flavored tobacco products and which Plaintiffs would distribute for resale in the County but for the Ordinance.

30. RJRT manufactures and sells various tobacco products—including products with characterizing flavors, such as menthol cigarettes, as well as cigarettes that do not have characterizing flavors—under a variety of brand names, including Newport and Camel. RJRT also sells smokeless tobacco products, including flavored smokeless tobacco products, under the brand name Camel SNUS.

31. ASC markets and sells various smokeless tobacco products—including products with and without characterizing flavors—under a variety of brand names, including "Grizzly."

32. Santa Fe markets and sells various tobacco products—including products with characterizing flavors, such as menthol cigarettes, as well as cigarettes that do not have characterizing flavors—under the brand name Natural American Spirit.

33. RJRT, ASC, and Santa Fe each desires to resume selling flavored tobacco products for resale within the County of Los Angeles.

34. The Act's ban on flavored tobacco products harms RJRT, ASC, and Santa Fe because it severely restricts their ability to market and sell their products to customers in the County of Los Angeles.

# CLAIMS FOR RELIEF

## COUNT I

### Express Preemption

35. The preceding paragraphs are incorporated and re-alleged here.

36. The Supremacy Clause of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, state laws and local ordinances that conflict with federal law are "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).

37. Under the Los Angeles County Tobacco Ordinance, as amended, Plaintiffs can no longer manufacture "any flavored tobacco product or any component, part or accessory intended to impart, or imparting a characterizing flavor in any form, to any tobacco product or nicotine delivery device, including electronic smoking devices" for sale within L.A. County. L.A. Cty. Code § 11.35.070(E). Any violation can result in criminal fines. *See, e.g.*, *id.* §§ 11.35.070(E), 11.35.120(A).

38. Under the Tobacco Control Act's preemption clause, the County of Los Angeles is prohibited from enacting and enforcing ordinances that are "different from, or in addition to," any of the Tobacco Control Act's or FDA's requirements relating to federal "tobacco product standards." 21 U.S.C. § 387p(a)(2)(A). The County's ban on flavored tobacco products is "different from, or in addition to," the requirements of federal law, and is thus preempted.

39. Accordingly, the Tobacco Control Act preempts the County of Los Angeles's ban on flavored tobacco products, rendering it invalid and unenforceable.

## COUNT II

### Implied Preemption

40. The preceding paragraphs are incorporated and re-alleged here.

41. "Obstacle preemption" occurs when a state law or local ordinance "stands as an obstacle to the accomplishment and execution of the full purposes and

objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

42. One purpose of the Tobacco Control Act is "to authorize the [FDA] to set national standards controlling the manufacture of tobacco products and the … amount of ingredients used in such products." Tobacco Control Act § 3(3), 123 Stat. at 1781 (codified at 21 U.S.C. § 387 note).

43. The County of Los Angeles's ban on flavored tobacco products directly undermines the Act's ability to set such national standards.

44. Another purpose of the Tobacco Control Act is "to continue to permit the sale of tobacco products to adults" while making them inaccessible to minors. *Id.* § 3(7), 123 Stat. at 1782 (codified at 21 U.S.C. § 387 note). To that end, FDA has elected to allow menthol cigarettes to stay on the market. *See id.* § 387g(a)(1)(A). Menthol cigarettes thus must remain available on the market unless and until FDA properly determines that they must be removed from the market. *See id.*

45. Consistent with its federal authority, FDA has been exploring regulation of flavors in tobacco products. *See, e.g.*, *Menthol in Cigarettes, Tobacco Products; Request for Comments*, 78 Fed. Reg. 44,484, 44,485 (July 24, 2013); *Regulation of Flavors in Tobacco Products*, 83 Fed. Reg. 12,294, 12,299 (Mar. 21, 2018); FDA, *Enforcement Priorities for Electronic Nicotine Delivery Systems (ENDS) and other Deemed Products on the Market Without Premarket Authorization* 19 (May 2020) ("*Enforcement Priorities*") (announcing policy that effectively bans the sale of any flavored, cartridge-based ENDS product (*other than a tobacco- or menthol-flavored ENDS product*)), *at* https://www.fda.gov/regulatory-information/search-fda-guidance-documents/enforcement-priorities-electronic-nicotine-delivery-system-ends-and-other-deemed-products-market.

46. The County's ban on flavored tobacco products directly conflicts with the federal government's ongoing and active efforts to address flavors in tobacco products, and is therefore preempted.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

47. Accordingly, the Tobacco Control Act preempts the County's law, rendering it invalid and unenforceable.

## REQUEST FOR RELIEF

Plaintiffs request that this Court grant the following relief:

48. Pursuant to 28 U.S.C. § 2201, declare that under the Supremacy Clause of the United States Constitution, the Tobacco Control Act preempts the Los Angeles County Tobacco Ordinance's ban on menthol cigarettes and flavored smokeless tobacco products, rendering it invalid and unenforceable.

49. Under Federal Rule of Civil Procedure 65, preliminarily enjoin Defendants from enforcement or implementation of the County's ban on menthol cigarettes and flavored smokeless tobacco products;

50. Permanently enjoin Defendants from enforcement or implementation of the County of Los Angeles's ban on menthol cigarettes and flavored smokeless tobacco products;

51. Award Plaintiffs their costs and disbursements associated with this litigation under 28 U.S.C. § 2412 and other applicable authority; and

52. Provide such other relief as the Court deems appropriate.

Respectfully submitted,

Dated: June 1, 2020

JONES DAY

By: *Jason Wright*
Jason C. Wright

Attorney for Plaintiffs
R.J. REYNOLDS TOBACCO COMPANY; AMERICAN SNUFF COMPANY, LLC; AND SANTA FE NATURAL TOBACCO COMPANY, INC.