# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.J. REYNOLDS TOBACCO COMPANY, et al., <br>    Plaintiffs, <br><br> v. <br><br> COUNTY OF LOS ANGELES, et al., <br>    Defendants. | CV 20-4880 DSF (KSx) <br><br> Order DENYING Plaintiffs' Motion for Preliminary Injunction (Dkt. 17) |

Plaintiffs R.J. Reynolds Tobacco Company, American Snuff Company, LLC, and Santa Fe Natural Tobacco Company, Inc. move for an order enjoining Defendant County of Los Angeles from enforcing a County ordinance that prohibits the sale of flavored tobacco products. Dkt. 17-1 (Mot.). The County opposes. Dkt. 28 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the motion is DENIED.

## I. BACKGROUND

Los Angeles County Code Section 11.35 (the Ordinance) regulates the sale of tobacco. Amendments to the Ordinance were passed at the September 24, 2019 County Board of Supervisors meeting, enacted on November 1, 2019, and became effective on May 1, 2020. Relevant here, the Ordinance prohibits tobacco retailers from "sell[ing] or offer[ing] for sale, or . . . possess[ing] with the intent to sell or offer for sale, any flavored tobacco product or any component, part, or accessory intended to impart, or imparting a characterizing flavor in any form, to

any tobacco product or nicotine delivery device, including electronic smoking devices." Id. § 11.35.070(E). A "Flavored Tobacco Product" is defined as "any tobacco product . . . which imparts a characterizing flavor." Id. § 11.35.020(J). A "tobacco product" is "[a]ny product containing, made, or derived from tobacco or nicotine," including cigarettes, and "[a]ny electronic smoking device that delivers nicotine or other substances," including e-cigarettes and vaping devices. Id. § 11.35.020(U)(1)-(2). A "characterizing flavor" is defined as:

> a taste or aroma, other than the taste or aroma of tobacco, imparted either prior to or during consumption of a tobacco product or any byproduct produced by the tobacco product, including, but not limited to, tastes or aromas relating to menthol, mint, wintergreen, fruit, chocolate, vanilla, honey, candy, cocoa, dessert, alcoholic beverage, herb, or spice. Characterizing flavor includes flavor in any form, mixed with or otherwise added to any tobacco product or nicotine delivery device, including electronic smoking devices.

Id. § 11.35.020(C).

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as a matter of right." Winter v. Natural Res. Def. Council, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. at 20. Although a plaintiff seeking a preliminary injunction must make a showing on each factor, the Ninth Circuit employs a "version of the sliding scale" approach where "a stronger showing of one element may offset a weaker showing of another." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-35 (9th Cir. 2011). Under this approach, a court may issue a preliminary injunction where there are "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff . . . , so long

2

as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Id. at 1135 (internal quotation marks omitted). "When the government is a party, the last two factors (equities and public interest) merge." E. Bay Sanctuary Covenant v. Trump, 950 F.3d 1242, 1271 (9th Cir. 2020).

### III. DISCUSSION

Plaintiffs contend that they are likely to succeed on the merits of their claims that the Ordinance is unconstitutional under the Supremacy Clause. The Court disagrees. Because Plaintiffs have not established that they are likely to succeed on the merits or even that there are serious questions going to the merits, the Court need not consider the other Winter factors. See Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (en banc) ("[W]hen a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three [*Winter* elements]" (alteration in original) (internal quotation marks omitted) (quoting Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris, 729 F.3d 937, 944 (9th Cir. 2013))).

### A.   Express Preemption

Plaintiffs contend that the Family Smoking Prevention and Tobacco Control Act (the FSPTCA), 21 U.S.C. §§ 387-387u, expressly preempts the Ordinance because the Ordinance impermissibly "establishes a state requirement that is 'different from' and 'in addition to' federal requirements related to tobacco product standards." Mot. at 11. Preemption under the FSPTCA is governed by a Preemption Clause, a Preservation Clause, and a Savings Clause:

- Preemption Clause.  "[W]ith respect to a tobacco product," the FSPTCA preempts, "any requirement which is different from, or in addition to, any requirement under the provisions of this subchapter relating to tobacco product standards, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products." 21 U.S.C. § 387p(a)(2)(A).

3

- <u>Preservation Clause.</u>  "Except as provided in [the Preemption Clause]," the FSPTCA does not limit the County's authority to enact requirements "relating to or prohibiting the sale, distribution, possession, exposure to, access to, advertising and promotion of, or use of tobacco products by individuals of any age, information reporting to the State, or measures relating to fire safety standards for tobacco products."  21 U.S.C. § 387p(a)(1).

- <u>Savings Clause.</u>  The Preemption Clause "does not apply to requirements relating to the sale, distribution, possession, information reporting to the State, exposure to, access to, the advertising and promotion of, or use of, tobacco products by individuals of any age, or relating to fire safety standards for tobacco products."  21 U.S.C. § 387p(a)(2)(B).

Under the Preemption Clause, the first question the Court must answer is whether the Ordinance relates to "tobacco product standards."  The FSPTCA has a section on "Tobacco Product Standards."  21 U.S.C. § 387g.  That section sets out two "[s]pecial rules," <u>id.</u> § 387g(a)(1), and then gives the FDA authority to revise those rules, <u>id.</u> § 387g(a)(2), and adopt additional tobacco standards, <u>id.</u> § 387g(a)(3).  The first of those special rules is the "Special rule for cigarettes" which prohibits cigarettes from "contain[ing], as a constituent (including a smoke constituent) or additive, an artificial or natural flavor (other than tobacco or menthol) . . . ."  21 U.S.C. § 387g(a)(1)(A) (the Special Rule).  Plaintiffs contend that "[i]f a ban on all flavored cigarettes except menthol is a tobacco product standard – indeed, the paradigmatic example of a tobacco product standard – then a state law or local ordinance that bans all flavored tobacco products *including* menthol is a tobacco product standard as well."  Mot. at 12; <u>see also</u> <u>id.</u> at 13 ("at a bare minimum, the County's ban on 'menthol cigarettes' is 'different from' and 'in addition to' the Tobacco Control Act's express allowance (subject to FDA's authority) of menthol cigarettes").  Additionally, future tobacco product standards "shall, where appropriate for the protection of the public health, include . . . provisions respecting the construction, components, ingredients, additives, constituents, including smoke constituents, and properties of

4

the tobacco product." 21 U.S.C. § 387g(a)(4)(B)(i).  Plaintiffs note that both "additives" and "properties" of tobacco products include flavoring. Mot. at 11 ("'additives' include 'substances intended for use as a flavoring.'" (quoting 21 U.S.C. § 387(1)); Dkt. 31 (Reply) at 8-9 ("A 'property' of a product is an 'attribute, characteristic, or quality' of the product" and "the 'taste or aroma' of a product is an 'attribute, characteristic, or quality' of the product." (first quoting Oxford English Dictionary, "Property" (2020), available at https://www.oed.com; then quoting Webster's Third New International Dictionary 1818 (1981)).[1] Plaintiffs contend that putting all of these provisions together, "a 'tobacco product standard' includes any provision respecting the substances intended for use as a tobacco-product flavoring."  Mot. at 11-12.  The Court disagrees with Plaintiffs' analysis.

The courts to have addressed the preemption of local flavored tobacco bans have held that the local ordinances were not preempted. See Nat'l Ass'n of Tobacco Outlets, Inc. v. City of Providence, R.I., 731 F.3d 71, 85 (1st Cir. 2013); U.S. Smokeless Tobacco Mfg. Co. LLC v. City of New York, 708 F.3d 428, 436 (2d Cir. 2013); Indeps. Gas & Serv. Stations Associations, Inc. v. City of Chicago, 112 F. Supp. 3d 749, 754 (N.D. Ill. 2015).  The Ordinance at issue here is more restrictive than the ordinances previously held not to be preempted.  Nevertheless, the Court finds those cases to be instructive.

---

[1] Plaintiffs also point to various advance notices of proposed rulemaking, and other FDA documents, purportedly "contemplating the adoption of 'tobacco product standard[s]' banning various flavored tobacco products, including menthol cigarettes and flavored vapor products."  Mot. at 12-13; see also Reply at 9.  For example, in a recently released FDA Guidance document, the FDA explains that the final guidance "is not setting tobacco product standards, such as a tobacco product standard restricting or eliminating the use of flavors in ENDS."  Mot. at 12-13 (citing FDA, Enforcement Priorities for Electronic Nicotine Delivery Systems (ENDS) and other Deemed Products on the Market Without Premarket Authorization 34 (Apr. 2020)).  However, the various FDA documents are not controlling and the Court concludes that these documents do not require the Ordinance to be considered a tobacco product standard.

In U.S. Smokeless Tobacco, the Second Circuit concluded that a ban on flavored tobacco products was not a tobacco product standard because the ordinance addressed only "whether final tobacco products are ultimately characterized by – or marketed as having – a flavor" and "is not easily read to direct manufacturers as to which ingredients they may or may not include in their products." 708 F.3d at 435. The Second Circuit concluded that so long as a sales regulation does not "clearly infringe on the FDA's authority to determine what chemicals and processes may be used in making tobacco products," it is not a tobacco product standard and is not preempted. Id. at 434. The court of appeals contrasted the Special Rule that "prohibits manufacturers from producing cigarettes that contain 'an artificial or natural flavor' as a constituent or additive" with the New York ordinance, which "explicitly does not turn on 'the use of additives or flavorings,' but rather on whether the product itself imparts 'a distinguishable taste or aroma.'" Id. The Ordinance here also defines "characterizing flavor" based on "a taste or aroma" – not constituents or additives. See L.A. Cty. Code § 11.35.020(C). The County contends, therefore, that like the New York ordinance, the Ordinance here "is not attempting to tell manufacture[r]s how to *make* their products. Rather, the Ordinance bans the *sale* of a final product, *i.e.*, tobacco products with 'a taste or aroma, other than the taste or aroma of tobacco' *regardless* of how that taste or aroma comes to be, which sales regulation the FSPTCA expressly preserves for state and local governments." Opp'n at 17-18 (emphases in original). Plaintiffs point out that "there is only one way a taste or aroma other than the taste or aroma of tobacco can come to be in a tobacco product – through an additive." Reply at 8. Assuming, without concluding, that this is true, this fact does not change the analysis of the Second Circuit, which the Court finds to be persuasive.

Plaintiffs also contend that U.S. Smokeless Tobacco is distinguishable because the Second Circuit noted (in dicta) that the ordinance in that case "regulates a niche product, not a broad category of products such as cigarettes or smokeless tobacco." Mot. at 13 (quoting U.S. Smokeless Tobacco, 708 F.3d at 436). However, this comment did not control the court's analysis of whether the ordinance

6

at issue was a tobacco product standard. Regardless of which tobacco products are included and which flavors are prohibited, the reasoning underlying the Second Circuit's opinion remains the same – a sales ordinance that does not direct manufacturers as to which ingredients they may or may not include is not a preempted tobacco product standard. And if an ordinance is not a product standard, it does not matter if it is "different from, or in addition to" a federal product standard.[2]

      Plaintiffs further contend that the Ordinance here, unlike the ordinance in U.S. Smokeless Tobacco, is "directed at the manufacturing process" because the Ordinance "regulates what can be 'mixed with or otherwise added to any tobacco product.'" Mot. at 14 (quoting L.A. Cty. Code § 11.35.020(C)). Plaintiffs' selective quotation is misleading. The entire sentence says that a "characterizing flavor" can be a "flavor in any form, mixed with or otherwise added to any tobacco product or nicotine delivery device, including electronic smoking devices." L.A.

---

[2] Plaintiffs relatedly contend that U.S. Smokeless Tobacco and National Ass'n are distinguishable because they were not complete prohibitions on flavored tobacco products, and therefore appropriately fell into the Savings Clause. Mot. at 18-19. The New York City ordinance prohibited the sale, "except in a tobacco bar," of "any flavored tobacco product," which was defined as "any item, not including cigarettes, that contains both tobacco and 'a constituent that imparts a characterizing flavor' . . . 'other than the taste or aroma of tobacco, menthol, mint or wintergreen.'" U.S. Smokeless Tobacco, 708 F.3d at 431. The similar Providence ordinance prohibited the sale, "except in a smoking bar," of any "flavored tobacco product," which "expressly excludes cigarettes" and includes other tobacco products that "contain[] a constituent that imparts a characterizing flavor," National Ass'n, 731 F.3d at 74 & n.2, except for the "taste or aroma of tobacco, menthol, mint or wintergreen," Nat'l Ass'n of Tobacco Outlets, Inc. v. City of Providence, No. CA 12-96-ML, 2012 WL 6128707, at *8 (D.R.I. Dec. 10, 2012). The County contends that because the Ordinance does not prohibit tobacco-flavored products, it is not a complete ban either. Opp'n at 20-21. Because the issue of whether an ordinance is a regulation or a ban is only potentially relevant to application of the Savings Clause, the Court does not wade into this dispute.

Cty. Code § 11.35.020(C).  The County notes that "[t]he point of this clarifying language is . . . to state that the sale of tobacco products with flavors other than tobacco, ***no matter how they are created***, and whether non-tobacco flavor is added during manufacture or imparted during consumption, is banned.  The Ordinance does not make any distinction between tobacco products with flavors other than tobacco based on ***how*** flavor is added, but rather bans the sale of them wholesale based on their sensory impact on the consumer."  Opp'n at 18 (emphasis in original).  The Court agrees and interprets this part of the definition of "characterizing flavor" only to ensure that devices that impart flavor "in any form" during consumption are included in the ban.  It does not address "mixing or adding" constituents or additives during the manufacturing stage.

    Next, Plaintiffs contend that because the FSPTCA enforces its tobacco product standards "through a ban on the sale of offending products," it is no answer to say that because the Ordinance prohibits sales, it is not a tobacco product standard.  See Mot. at 14.  The Second Circuit persuasively rejected a similar argument.  In U.S. Smokeless Tobacco, the Second Circuit contrasted the ordinance at issue with the challenged state law in Nat'l Meat Ass'n v. Harris, 565 U.S. 452 (2012), which "expressly prohibited the sale of meat that was not produced in accordance with specific rules to be applied at the slaughterhouse,"[3] noting that the flavored tobacco ban "does not concern itself with the

---

[3] The Federal Meat Inspection Act preempts any requirements "with respect to premises, facilities and operations of any establishment at which inspection is provided under" the act, such as slaughterhouses.  Nat'l Meat, 565 U.S. at 458.  The challenged state law in National Meat prohibited the processing or selling of meat from nonambulatory animals for human consumption.  Id. at 458-59.  The Supreme Court held that because the sales ban aided other sections of the law that more directly regulated slaughterhouse operations, and because the "idea – and the inevitable effect – of the provision is to make sure that slaughterhouses remove nonambulatory pigs from the production process," the sales ban was a preempted regulation of "how slaughterhouses must deal with non-ambulatory pigs on their premises."  Id. at 463-64.

mode of manufacturing, or with the ingredients that may be included in tobacco products." U.S. Smokeless Tobacco, 708 F.3d at 435 n.2. Instead, because the FSPTCA expressly incorporates a distinction between sales regulations and "regulation at the manufacturing stage," a different result is warranted. Id. at 434.[4] Holding otherwise would "render superfluous § 916's three-part structure, and in particular would vitiate the preservation clause's instruction that the Act not be 'construed to limit the authority of . . . a State or political subdivision of a State . . . to enact . . . and enforce any . . . measure . . . prohibiting the sale . . . of tobacco products.'" Id. (alterations in original) (quoting 21 U.S.C.A. § 387p(a)(1)); see also Nat'l Ass'n, 731 F.3d at 82, 83 n.10 (holding that a flavored tobacco ban was not a "sales restriction[] effectively and impermissibly impos[ing] a new product or manufacturing standard in violation of the preemption provision," noting that "the distinction between sales and manufacturing regulations is clearly supported by 21 U.S.C. § 387p(a)(1)"); Indeps Gas, 112 F. Supp. 3d at 754 ("an ordinance that banned tobacco products flavored using a particular manufacturing process might be preempted by the FSPTCA," but the ordinance at issue "regulates flavored tobacco products without regard for how they are manufactured . . . and, accordingly, is exempt from the FSPTCA's preemption clause").

      Additionally, as the Second Circuit aptly explained, the flavored tobacco ban at issue "prohibits the sale of a recognized category of tobacco products, characterized by their flavor and marketed as a distinct product. Plaintiffs' effort to characterize the ordinance as a manufacturing standard is tantamount to describing a ban on

---

[4] The First Circuit also emphasized that the preemption clause in National Meat "did not contain a savings clause expressly exempting regulations 'relating to the sale' of the product from preemption," Nat'l Ass'n, 731 F.3d at 82, and that the same is true regarding the preemption provision at issue in Engine Manufacturers Ass'n v. South Coast Air Quality Management District, 541 U.S. 246 (2004), id. at 83 n.10 ("[T]he statutory scheme at issue there, like that in National Meat, did not contain a preservation clause that directly exempted sales regulations from preemption.").

9

cigarettes as a manufacturing standard mandating that cigars be manufactured in minimum sizes and with tobacco-leaf rather than paper wrappings." U.S. Smokeless Tobacco, 708 F.3d at 435 n.2. A prohibition on the sale of a distinct product is simply not a product standard.[5] As the County points out, this conclusion further distinguishes National Meat because "in that case the end product – meat – was the same regardless of whether processed from an ambulatory or nonambulatory animal. Thus, the *only* way to determine whether a product was banned was to consider how it was manufactured." Opp'n at 19 (emphasis in original). Here, banned products can be identified based on how they are marketed and sold.

Finally, the Court acknowledges the general presumption that "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" CTS Corp. v. Waldburger, 573 U.S. 1, 19 (2014) (quoting Altria Grp., Inc. v. Good, 555 U.S. 70, 77 (2008)). "The effect of that presumption is to support, where plausible, 'a narrow interpretation' of an express pre-emption provision, . . . especially 'when Congress has legislated in a field traditionally occupied by the States[.]'" Id. (first quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996); then quoting Altria, 555 U.S. at 77).[6] The Supreme Court recognized no later than

---

[5] For this reason, the Court finds Plaintiffs' parade of horribles, Mot. at 17, unpersuasive.

[6] Plaintiffs contend that any presumption against preemption "has no place" where there is an express preemption clause. Reply at 7 (quoting Puerto Rico v. Franklin California Tax-Free Tr., 136 S. Ct. 1938, 1946 (2016)). However, the Supreme Court in Franklin did not so hold. Rather, it held that it would not invoke the presumption against preemption where the statute's language was plain. Franklin, 136 S. Ct. at 1946. The presumption addressed above applies where there is ambiguity. Plaintiffs' argument assumes the primary disputed issue in this case – that the Ordinance qualifies as a tobacco product standard. See Reply at 8. Plaintiffs also note that "[t]he Supreme Court has 'repeatedly declined to give broad effect to saving clauses where doing so would upset the careful regulatory scheme established by federal law.'" Mot. at 16 (citing Geier v. Am. Honda Motor Co., 529 U.S. 861, 870 (2000)). This

10

1900 that a "cigarette ban [i]s the type of legislation that states may enact 'for the preservation of the public health or safety' under their police powers." Graham v. R.J. Reynolds Tobacco Co., 857 F.3d 1169, 1190–91 (11th Cir. 2017) (quoting Austin v. State of Tennessee, 179 U.S. 343, 349 (1900)).  Here, to the extent the Preemption Clause is "susceptible of more than one plausible reading," the Court accepts the narrower plausible interpretation – that the flavored tobacco ban is not a tobacco product standard.  See U.S. Smokeless Tobacco, 708 F.3d at 433 (2d Cir. 2013) ("if there is any ambiguity as to whether the local and federal laws can coexist, we must uphold the ordinance"); see also U.S. Smokeless Tobacco Mfg. Co. v. City of New York, No. 09 CIV. 10511 CM, 2011 WL 5569431, at *7 (S.D.N.Y. Nov. 15, 2011) ("[A]s the Preemption Clause is itself silent regarding sales prohibitions, it seems far more likely that prohibitions are preserved and never preempted, and therefore need never be saved.  Insofar as the latter inference is more consistent with the statute's language, structure, and purpose, I opt for it.").[7]

---

applies only to the scope of savings clauses, not to the scope of preemption clauses.  And even if it somehow applied here, the regulatory scheme is not intended to prevent states and localities from prohibiting the sale of tobacco products, as stated explicitly by the Preservation Clause.

[7] Although raised primarily in the context of the Savings Clause, the Court addresses two additional arguments that could equally apply to the Preservation Clause.  First, Plaintiffs contend that "the phrase 'by individuals of any age' limits the scope of the saving clause to age-based requirements." Mot. at 15; see also Reply at 13 ("The preservation clause is also limited to age-based prohibitions in any event").  The plain meaning of that phrase is the opposite of what Plaintiffs suggest – states and localities are free to enact requirements regardless of age.  Rather than being "superfluous," Reply at 12, the language emphasizes that regulations are permissible beyond age-based restrictions.  Second, Plaintiffs contend that the Savings Clause permits only regulations of "the time, place, and manner of the product's sale and distribution." Mot. at 15.  Plaintiffs provide no support for such a claim.  Plaintiffs may be importing to the Savings Clause limitations found in another statute regulating advertising and labeling: "a

For these reasons, the Court agrees with the First and Second Circuits that a flavored tobacco ban is not a regulation of tobacco product standards and therefore is not preempted. The Court need not decide whether the Savings Clause would save the Ordinance if it did regulate tobacco product standards. The Ordinance may very well have negative foreseen or unforeseen consequences, not just on the people who sell flavored tobacco products, but also on the people who use them. Such concerns should be directed to the appropriate legislative bodies. Plaintiffs have not demonstrated serious questions going to, or a likelihood of success on, the merits of their express preemption claim.

**B.    Implied Preemption**

Plaintiffs contend that even if the Ordinance is not expressly preempted, it is "impliedly preempted because it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Mot. at 22 (citing Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 373 (2000)). "As with express preemption, courts assume that the historic police powers of the States are not superseded unless that was the clear and manifest purpose of Congress." Ass'n des Éleveurs de Canards et d'Oies du Québec v. Becerra, 870 F.3d 1140, 1153 (9th Cir. 2017) (internal quotation marks omitted) (quoting Arizona v. United States, 567 U.S. 387, 400 (2012)).

First, Plaintiffs contend that the FSPTCA was adopted to set national standards for the manufacturing of, and the ingredients in, tobacco products. Id. Because the Court has concluded that the

---

State or locality may enact statutes and promulgate regulations, based on smoking and health, . . . imposing specific bans or restrictions on the time, place, and manner, but not content, of the advertising or promotion of any cigarettes." 15 U.S.C. § 1334(c). Plaintiffs have provided no explanation as to why this requirement would apply to sales regulations under the Savings (or Preservation) Clauses. The district court in U.S. Smokeless Tobacco convincingly rejected the argument that there is any "time, place, and manner" limitation on tobacco product sales regulations. 2011 WL 5569431, at *5.

Ordinance is neither a manufacturing standard nor does it regulate the ingredients of tobacco products, the Ordinance is not an obstacle to this purpose.

Second, Plaintiffs contend that the Ordinance "would undermine Congress's and the FDA's judgment that certain flavored tobacco products – including menthol cigarettes – should remain on the market." Id. at 23. However, the FSPTCA expressly gives state and local governments the power to prohibit the sale of tobacco products, even if those sales bans are stricter than the federal ban, so long as the regulation is not covered by the Preemption Clause. See U.S. Smokeless Tobacco, 708 F.3d at 433 ("While § 907(d)(3) prohibits the FDA from banning entire categories of tobacco products throughout the country, 21 U.S.C. § 387g(d)(3), the FSPTCA nowhere extends that prohibition to state and local governments. To the contrary, the preservation clause of § 916 expressly *preserves* localities' traditional power to adopt any 'measure relating to or prohibiting the sale' of tobacco products" (footnote omitted)); see also Berger v. Philip Morris USA, Inc., 185 F. Supp. 3d 1324, 1340-41 (M.D. Fla. 2016), aff'd sub nom. Cote v. R.J. Reynolds Tobacco Co., 909 F.3d 1094 (11th Cir. 2018) ("state-law prohibitions on cigarette sales can stand side-by-side with the fact that Congress has tolerated cigarettes and purposefully refrained from banning them").[8] In fact, local regulations covered by the Preservation Clause, like the Ordinance, can promote the purposes and objectives of the FSPTCA by acting as testing grounds for new and

---

[8] The cases cited by Plaintiffs, Reply at 16, largely pre-date the FSPTCA (and the Preservation Clause) and address only claims that cigarettes are defectively designed, not state or local power to enact tobacco product bans. See, e.g., Pooshs v. Philip Morris USA, Inc., 904 F. Supp. 2d 1009, 1025-26 (N.D. Cal. 2012) (rejecting contention that cigarettes are defectively designed, relying in part on Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120 (2000) which held that "[a] ban of tobacco products ***by the FDA*** would therefore plainly contradict congressional policy." Id. at 139 (emphasis added)); see also Graham, 857 F.3d at 1190 ("Although federal agencies have only the authority granted to them by Congress, states are sovereign").

13

innovative policies aiming to protect public health, and particularly the health of underage purchasers. Therefore, the Ordinance does not stand as an obstacle to the FSPTCA.

Plaintiffs have not demonstrated serious questions going to, or a likelihood of success on, the merits of their implied preemption claim.

## IV. CONCLUSION

Plaintiffs' motion for a preliminary injunction is DENIED.

IT IS SO ORDERED.


Date: July 13, 2020

Dale S. Fischer
United States District Judge